United States District Court
Southern District of Texas

**ENTERED**
June 26, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| SEYDPOURIYA SALEHI RAD, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-CV-67 |
| | § | |
| KRISTI NOEM, *et al.*,[1] | § | |
| | § | |
| Respondents. | § | |

## REPORT AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Petitioner's First Amended Petition for Writ of Habeas Corpus and Respondents' Amended Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment (Dkt. Nos. 6, 24). United States District Judge Marina Garcia Marmolejo referred these matters to the Undersigned to issue a Report and Recommendation. (Dkt. No. 26).

For the reasons set forth below, the Undersigned **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **GRANTED IN PART** and that Respondents' Motion for Summary Judgment be **DENIED**.

## I. FACTUAL HISTORY

### A. Immigration Background

Petitioner SeydPouriya Salehi Rad is a native citizen of Iran who arrived in the United States on or about January 27, 2025, and was taken into custody by United States Border Patrol the same day. (Dkt. Nos. 6 at 1; 28 at 2).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Markwayne Mullin is substituted for Respondent Kristi Noem and David Venturella is substituted for Respondent Todd Lyons in this case. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

In accordance with Presidential Proclamation No. 10888, issued the week before Petitioner was detained, Respondents did not conduct a credible fear screening of Petitioner. (Dkt. Nos. 28 at 2; 28-1 at 14). *See also,* 90 Fed. Reg. 8333 (Jan. 20, 2025). Instead, Petitioner was referred to a withholding-only proceedings under the Convention Against Torture ("CAT"). (Dkt. Nos. 28 at 3; 28-1 at 13–14).[2]

On April 29, 2025, an immigration judge ("IJ") ordered Petitioner to file "[a]ny and all applications for relief" by May 9, 2025. (Dkt. No. 25-1 at 7). On May 9, 2025, the IJ determined that Petitioner had not submitted any applications and ordered that Petitioner be removed to Iran. (*Id.* at 5-6).

After the District Court for the District of Columbia ruled that the Presidential Proclamation violated the INA,[3] the Government conducted a credible fear interview of Petitioner on or about September 28, 2025, determined that he did not establish a credible fear of persecution, and ordered him removed to Iran. (Dkt. No. 24-2 at 1-2.) Petitioner appealed this decision to an IJ, who affirmed the negative credible fear determination on September 29, 2025, and issued a second order of removal. (Dkt. No. 24-3).

### B. Habeas Petition Background

Petitioner filed his initial pro se petition on January 16, 2026. (Dkt. No. 1). The next day, the Court appointed Mr. Carlos M. Garcia to represent petitioner. (Dkt. No. 3). On February 5, 2026, Petitioner filed his First Amended Petition for Writ of Habeas Corpus. (Dkt. No. 6). On February 11, 2026, Respondents filed their Response to the Petition for Writ

---

[2] "The guidance instructs asylum officers to perform CAT 'assessments' rather than credible fear screenings." *See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 57 (D.D.C. 2025), *aff'd sub nom. Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026) (finding the President lacked inherent constitutional authority to supplant INA's removal procedures for noncitizens who had entered the United States).

[3] *Supra* n.1

of Habeas Corpus and Motion to Dismiss. (Dkt. No. 10). On April 24, 2026, the petition and motion were referred to the Undersigned by the District Judge to issue a Report and Recommendation. (Dkt. No. 14).

A motions hearing was held before the Undersigned on May 18, 2026. (*See* Minute Entry Dated May 18, 2026). At the hearing the parties agreed that more than six months had elapsed since Petitioner's removal order became administratively final and stated that they had no objection to the Court ruling on the pleadings without further motions. (*Id.* at 1:02, 1:05). Respondents conceded that Petitioner met his burden under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that he has no criminal history or background that would justify confinement. (*Id.* at 1:02, 1:11). Respondents also conceded that, as Petitioner is a citizen of Iran, there is no likelihood of removal to Iran in the reasonably foreseeable future because of the ongoing conflict. (*Id.* at 1:07–1:08). Additionally, counsel for Respondents stated he is unaware of any third country willing to accept Iranian citizens. (*Id.*). At both the hearing and in their Motion to Dismiss, Respondents argued that petitioner was properly detained under 8 U.S.C. § 1231(a)(6). (*Id.* at 1:02) (Dkt. No. 10 at 4).

By regulation the Government is required to conduct custody reviews for aliens detained under § 1231(a) during and after the removal period. *See* 8 C.F.R. §§ 241.4(a), 241.4(c)(1)-(2), 241.4(g), 241.4(h), 241.13(a). As no record of a post-order custody review ("POCR") had been filed in this case, after the hearing the Undersigned ordered Respondents to file either a copy of any POCR they had conducted or an advisory explaining why no POCR was completed. (Dkt. No. 20). Respondents filed an advisory on May 26, 2026, explaining that it was the position of the Department of Homeland Security ("DHS") that it was not required to follow the custody-review procedures in this case because Petitioner is subject to an order of expedited removal and is detained under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). (Dkt. No. 21). To

address the discrepancy between this position and the position Respondents previously advanced, the Undersigned set a hearing for May 29, 2026. (Dkt. No. 22). The night before the hearing, Respondents filed a motion for leave to file an amended response, replacing their motion to dismiss with a Motion for Summary Judgment (Dkt. Nos. 23, 24). Petitioner filed a reply opposing the Motion for Leave that same night. (Dkt. No. 25).

During the hearing the next morning, Respondents retracted their position that § 1231(a)(6) and the standard set forth in *Zadvydas* apply to Petitioner. (*See* Minute Entry Dated May 29, 2026, at 9:08). When asked why Respondents were just now making this new argument, counsel for Respondents indicated he became aware of DHS' position after filing Respondents' motion to dismiss. (*Id.* at 9:14–9:15). Both parties still agreed that the IJ's September 29, 2025, order[4] affirming the denial of credible fear functioned as a final order of removal, and that more than six months had elapsed since it became final. (*Id.* at 9:11).

On June 1, 2026, the District Judge issued an amended referral to the Undersigned, which encompassed the newly filed motions. (Dkt. No. 26). That same day the Undersigned granted the motion for leave and Respondent's Motion for Summary Judgment became their live pleading. (Dkt. Nos. 24, 27). Petitioner was ordered to file a reply to the amended motion, which he did on June 5, 2026. (Dkt. No. 28).

Respondents argue that Petitioner is detained under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), the *Zadvydas* standard does not apply, and Petitioner, as an arriving alien, does not have a right to challenge his detention under the Due Process Clause. (Dkt. No. 24 at 1, 7). Petitioner argues that he is detained under 8 U.S.C. § 1231(a)(6), *Zadvydas* controls, and that he is subject to indefinite detention that violates due process. (Dkt. No. 28 at 6, 9).

---

[4] At the hearing the Undersigned inadvertently referred to the September 29, 2025, order as taking place on September 27, 2025. However, from all the records the controlling date is September 29, 2025, and the parties affirmed that date.

## II. LEGAL AUTHORITY

### A.  28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if he or she is "in custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. Sept. 26, 2025)). A court entertaining a habeas petition shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243.

### B.  Motions for Summary Judgment

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). If the moving party meets its burden of demonstrating the absence of a genuine factual dispute, the non-movant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and a "fact issue is 'material' if its resolution could affect the outcome of the action." *Canady v. Davis*, 687 F. App'x 362, 365 (5th Cir. 2017) (*quoting Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)). Last, "[b]ecause this case arises in a summary judgment posture, we view the facts in the light most favorable to [Petitioner], the nonmoving

party." *Id.* (*quoting City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015)).

### C.  Indefinite Detention and *Zadvydas v. Davis*, 533 U.S. 678 (2001)

Pursuant to the INA, the Government ordinarily secures the removal of an alien during the statutory 90-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). Relevant here is that the removal period begins to run on "[t]he date the order of removal becomes administratively final." § 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. § 1231(a)(2)(A).

If the alien is not removed during this statutory 90-day period, the Government may continue to detain the alien for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701. Beyond that point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.* (citation modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689-690.

## III. ANALYSIS

### A.  Disputes of Material Fact

Despite Petitioner's concerns about factual inconsistencies from the immigration proceedings, there are no disputed issues of material fact. (Dkt. No. 28 at 6). The issue of

whether Petitioner had a prior final order of removal when he was denied CAT withholding is immaterial because it would not affect the outcome of this action. This is because all parties agree that the September 29, 2025, order constitutes a final order of removal, and there is no dispute that the substance of that order affirms the denial of Petitioner's credible fear claim.

Petitioner does not argue the September 29, 2025, order is invalid nor that it failed to supplant the May 9, 2025, order as the authority for removal. (Dkt. No. 28 at 3, n.1) Instead, he argues that the length of his post-removal detention is greater than previously established. (Dkt. No. 25 at 3). However, the time elapsed since both orders were entered exceeds the presumptively reasonable six-month period from *Zadvydas* by several months. Additionally, if the Court adopts Respondents' position that the time limits from 8 U.S.C. § 1231 and *Zadvydas* do not apply to Petitioner's detention, then the exact length of detention would not affect the outcome of the action. In that case, the real question would be whether any period of post-removal detention is prolonged or arbitrary such that it violates Petitioner's rights under the Due Process Clause to the Fifth Amendment.

Thus, the Undersigned finds that there are no genuine disputes of material fact and now turns to the issue of whether either party is entitled to judgment as a matter of law, beginning with the question of statutory detention authority.

### B. Statutory Detention Authority

To ascertain what statute provides the basis for Petitioner's detention, the Undersigned begins with the plain text. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)[5] provides that, "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." By contrast, 8 U.S.C. § 1231(a)(1)(A) states, "[W]hen an alien is ordered removed,

---

[5] Hereinafter "§ IV."

the Attorney General shall remove the alien from the United States within a period of 90 days." Additionally, 1231(a)(6) provides that, "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period."

Here, Petitioner is subject to a final order of removal in which an Immigration Judge found he could not establish a credible fear of persecution. (Dkt. No. 24-2 at 1). Petitioner argues that, despite the "until removed" language of § IV, his detention under that statute ended the moment the Immigration Judge entered the final order of removal, and he is instead detained under § 1231. (Dkt. No. 28 at 6). This argument conflicts with the overriding principle of statutory construction, which "requires the court to 'give effect, if possible, to every clause and word of a statute ... rather than to emasculate an entire section.'" *Texas Educ. Agency v. United States Dep't of Educ.*, 908 F.3d 127, 133 (5th Cir. 2018). Were Petitioner to be correct, the statute's meaning would be directly at odds with its language.

In making the above argument, Petitioner relies on language from the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), which found that the six-month post-removal period from *Zadvydas* could not be applied to ongoing proceedings under 8 U.S.C. § 1225(b). (Dkt. No. 28 at 7). In relying on *Jennings*, Petitioner cites to a specific passage of the opinion: "Once proceedings under 8 U.S.C. § 1225(b)(1) end, 'detention under § 1225(b) must end as well.'" (Dkt. No. 28 at 7) (quoting *Jennings,* 583 U.S. at 297). A full reading of the opinion, however, shows the Court was not referring to § IV.[6] Unlike the

---

[6] "Section 1225(b)(1) aliens are detained for 'further consideration of the application for asylum,' and § 1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].' Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text

instant matter, the detainees in *Jennings* were challenging their detention during ongoing proceedings for those who have been found to have made a credible fear claim. *Jennings,* 583 U.S. at 297.

Additionally, part of the dissent in *Jennings* briefly contrasts the clauses of 1225(b) with § IV. *Id.* at 348. Specifically, Justice Breyer describes § IV as, "[A] separate statutory provision that purports to do precisely what the majority says [§ 1225(b)(1)(B)(ii)] does, providing that certain aliens 'shall be detained...*until removed.*' The problem for the majority is that this other provision applies only to those who, unlike the respondents, have no credible fear of persecution. The provision that applies here lacks similar language." *Id.* (citations omitted). For those reasons, the Undersigned does not agree that *Jennings* can be read as mandating the cessation of detention authority under § IV.[7]

Petitioner argues that, even if he is detained under § IV, § 1231 and § IV ought to be read together so that the time limitations of §1231(a)(1)(A) and *Zadvydas* still apply. (Dkt. No. 28 at 7). This argument, however, runs headlong into one of the primary holdings of *Jennings*, which was that the plain language of the challenged clauses in §§ 1225(b)(1) and (b)(2) could not be understood as imposing any time limitations. *See Jennings*, 583 U.S. at 300-301 ("While *Zadvydas* found § 1231(a)(6) to be ambiguous, the same cannot be said of §§ 1225(b)(1) and (b)(2): Both provisions mandate detention until a certain point and authorize release prior to that point only under limited circumstances. As a result, neither provision can reasonably be read to limit detention to six months."). In rejecting any implied time limits, the Court paid particular attention to 1225(b)'s use of the word "shall." *Id.* at 300 ("[I]n

---

imposes any limit on the length of detention." *Jennings*, 583 U.S. at 297 (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A)).

[7] As will be addressed later, the reasoning from *Jennings* is not wholly inapplicable to the instant matter.

*Zadvydas*, the Court saw ambiguity in § 1231(a)(6)'s use of the word 'may.' Here, by contrast, §§ 1225(b)(1) and (b)(2) do not use the word 'may.'). *See also Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.").

Similarly, § IV unequivocally expresses a requirement when it provides that aliens subject to the clause "shall be detained… if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Just as the *Jennings* Court explained, this requirement of detention precludes a court from finding ambiguity that could be resolved via the imposition of a specific time limit. *See Jennings*, 583 U.S. at 300.

Thus, the Undersigned finds that Petitioner, as an alien found not to have a credible fear of persecution, is detained under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and the specific time limits enumerated in 8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(6), and *Zadvydas* do not apply. However, this is not the end of the inquiry because Petitioner also argues that his detention under § IV violates the Due Process Clause of the Fifth Amendment. (Dkt. No. 28 at 11). For their part, Respondents do not actually argue in their Motion for Summary Judgment that § IV is constitutional as applied to Petitioner (*See generally* Dkt. No. 24). Instead, they argue that Petitioner is not entitled to due process protection, and that § IV is not susceptible to due process claims. (Dkt. No. 24 at 9–10).

### C. Aliens' Due Process Rights

The text of the Fifth Amendment does not distinguish among citizens and noncitizens; rather, it provides that no "person" may be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Fifth Amendment's Due Process Clause applies to noncitizens and guarantees them constitutional protections. *See Zadvydas*, 533 U.S. at 693; *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("even aliens shall not be ... deprived

of life, liberty, or property without due process of law"); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). Therefore, the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas*, 533 U.S. at 693.

Despite the above, Respondents reference several cases to argue that aliens are not entitled to due process protection. (Dkt. No. 24 at 7–9). First, Respondents conflate an alien's limited rights for admission into the United States with the fundamental right to liberty. But Petitioner is not challenging the Immigration Court's decision regarding his admission or removal, merely the position that he can be indefinitely detained when Respondents have admitted that they are unable to carry out his removal. (Dkt. No. 28 at 3, n.1) (*See* Minute Entry Dated May 18, 2026, at 1:04).

Second, Respondents argue that "entry fiction," the doctrine that excludable aliens are to be treated as if detained at the border despite their physical presence in the United States, determines the due process rights to which an alien is entitled. (Dkt. No. 24 at 9). Respondents again confuse admission and liberty. "The 'entry fiction' determines the aliens' rights with regard to immigration and deportation proceedings. It does not limit the right of excludable aliens detained within United States territory to humane treatment." *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir. 1987). *See also Giri v. Lyons*, No. 5:26-CV-00149, 2026 WL 1361557 (S.D. Tex. May 12, 2026) (Saldaña, J.) ("To hold that Petitioner is not entitled to Fifth Amendment due process protections in the context of his current prolonged detention because he is subject to the entry fiction would be to decide that there are not constitutional limits on his civil immigration [detention] under 8 U.S.C. § 1225.").

Simply put, Petitioner's continued detention—regardless of his status in the United States—entitles him to review under the Fifth Amendment. *See Zadvydas*, 533 U.S. at 693. Therefore, finding that Petitioner is entitled to due process protection, the Undersigned must

now consider whether the statute, as applied to Petitioner, violates his rights under the Due Process Clause to be free from prolonged, indefinite, arbitrary detention. *See Zadvydas*, 533 U.S. at 689–690.

### D. Arbitrary Detention in Violation of Due Process

"A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. While the specific time limitation of *Zadvydas* is inapplicable to detention under § IV, the Undersigned finds that the framework the Supreme Court established for analyzing whether detention of an alien ordered removed is unreasonable still applies. This is because the issue addressed in *Zadvydas*, "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States," *see* 533 U.S. at 695, is exactly the issue before the Court today. The *Zadvydas* Court explained the analytical framework in the following manner:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699-700. Petitioner has been detained for almost nine months since his final order of removal, and for nearly seventeen months overall. (Dkt. Nos. 24-3 at 1; 6 at 1). Considering Petitioner is detained under the statutory framework for expedited removal,[8] the Undersigned finds that his detention is prolonged well past any period reasonably necessary to secure removal. Further, the concern with Petitioner's detention is not confined merely to its duration. Detention must also be reasonably related to its statutory purpose.

---

[8] *See* 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."

*Zadvydas,* 533 U.S. at 695 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738.) ("[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed."). Here, Respondents seek to detain Petitioner for no presently applicable purpose. Respondents conceded that, as Petitioner is a citizen of Iran, there is no likelihood of removal to Iran in the reasonably foreseeable future because of the ongoing conflict. (*See* Minute Entry Dated May 18, 2026, at 1:07–1:08). Respondents also conceded that Petitioner has no criminal history or background that would justify confinement. (*Id.* at 1:11). Finally, counsel for Respondents stated he is unaware of any third country willing to accept Iranian citizens.[9] (*Id.* at 1:07–1:08).

Respondents do not withdraw or contradict any of these statements in their Motion for Summary Judgment. (*See generally* Dkt. No. 24).  Instead, they merely argue that the statutory and constitutional standards under which they provided these concessions do not apply to Petitioner because he is detained under § IV. (Dkt. No. 24 at 1, 7). However, § IV's basic purpose is to detain those who are found not to have a credible fear so they can be removed from the United States. That purpose is now the exact thing Respondents have represented they cannot do.

Additionally, as the *Jennings* Court found, the standard justifications for civil detention do not factor into this sort of mandatory detention. *See Jennings,* 583 U.S. at 300 (finding nothing in the statutory text of § 1225(b) that could be interpreted to allow for bond if an alien is neither a flight risk nor a danger to the community). The *Zadvydas* Court also found that the remoteness of removal and the potential indefiniteness of detention limit the

---

[9] Because Petitioner is detained under § IV, the Undersigned is also skeptical of whether Respondents have the authority to remove Petitioner to a third country as the authority for that executive action comes from § 1231. However, this issue need not be resolved for the Court to issue this Report and Recommendation.

Government's ability to rely on these justifications even where they do apply.[10] Ultimately, this leaves Respondents without any justification for Petitioner's continued detention. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). For that reason, the Undersigned finds that Petitioner has met his burden to show that his detention is contrary to law by a preponderance of the evidence.

To be clear, the Undersigned is not recommending a saving statutory construction that would interpret § IV to implicitly contain specific deadlines to avoid unconstitutional ambiguity. The statute, by its plain language, is so unambiguous that adopting any such interpretation would be a rejection of the directives on statutory construction established in *Jennings*. However, *Zadvydas* too is more than just an analysis of § 1231(a)(6), and it would be a rejection of its directives on constitutional liberty to find indefinite detention tolerable under these circumstances. The Undersigned also does not find the statute is facially unconstitutional because, when an alien's removal can be carried out on an expedited basis, detention would be neither prolonged nor arbitrary. Instead, as a statute designed to provide for expedited removal, § IV cannot be constitutionally applied to Petitioner when his detention presently bears no relation to the statute's intended aim.

Thus, the Undersigned finds that § IV, as applied to Petitioner under the present circumstances, provides for prolonged, indefinite, arbitrary detention in violation of the Due Process Clause of the Fifth Amendment.

---

[10] *Zadvydas*, 533 U.S. at 690 ("The first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility. Preventive detention based on the second justification—protecting the community—has been upheld only when limited to specially dangerous individuals and subject to strong procedural protections. When preventive detention is potentially indefinite, this dangerousness rationale must also be accompanied by some other special circumstance, such as mental illness, that helps to create the danger. The civil confinement here is potentially permanent, and once the flight risk justification evaporates, the only special circumstance is the alien's removable status, which bears no relation to dangerousness.").

### E. Remedy

Petitioner requests release, or in the alternative a bond hearing before an Immigration Judge. As previously established, nothing in the language of § IV can reasonably be interpreted to require a bond hearing. Further a bond hearing even on purely constitutional grounds may not be appropriate because "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331). For that reason, the Undersigned finds that conditional release is the only appropriate remedy for Respondents' violation of Petitioner's rights.

## IV. RECOMMENDATIONS

For the foregoing reasons, the Undersigned **RECOMMENDS** Petitioner's Habeas Petition (Dkt. No. 6) be **GRANTED IN PART**.

It is further **RECOMMENDED** that Respondents' Motion to Dismiss (Dkt. No. 10) be **DENIED AS MOOT**.

It is further **RECOMMENDED** that Respondents' Motion for Summary Judgment (Dkt. No. 24) be **DENIED**.

It is further **RECOMMENDED** that the Clerk of Court be **DIRECTED** to update the nature of this suit to 8:1105(a) Aliens: Habeas Corpus to Release INS Det.

It is further **RECOMMENDED** that, should this Report and Recommendation be adopted, Respondents be ordered to release Petitioner from custody to a public place no later than 5:00 p.m. on the second day after this Report and Recommendation is adopted.

It is further **RECOMMENDED** that Petitioner's release be subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

It is further **RECOMMENDED** that Respondents be ordered to notify Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

It is further **RECOMMENDED** that the Parties be ordered to file a Joint Status Report no later than 5:00 p.m. on the fourth day after this Report and Recommendation is adopted, confirming that Petitioner has been released and advising the Court of his conditions of release.

It is further **RECOMMENDED** that the Court's prior Order that Respondents notify Petitioner's counsel and the Court of any planned removal of him from the United States, at least five (5) days before any such removal, (Dkt. No. 8 at 2), remain in place.

## V. WARNINGS

The parties may file objections to this Report and Recommendation, unless they waive the right to do so. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F. 2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F. 2d 404, 410 n.8 (5th Cir. 1982) (en banc)). Unless the District Judge directs otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the Magistrate Judge considers sufficient. *See* Fed. R. Crim. P. 59(b)(2).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. 28 U.S.C. § 636(b)(1); Fed. R. Crim.

P. 59(b); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      **SIGNED** on June 26, 2026.

                         Brian C. Bajew
                         United States Magistrate Judge