UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

SEYDPOURIYA SALEHI RAD § 
§ 
VS. § CIVIL ACTION NO. 5:26-cv-67
§ 
KRISTI NOEM[1] *et al.* § 

## ORDER MODIFYING REPORT AND RECOMMENDATION

The Court referred Petitioner's Writ of Habeas Corpus and its associated motions to United States Magistrate Judge Brian C. Bajew (Dkt. Nos. 14, 26). After holding a hearing, Judge Bajew concluded 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) served as Petitioner's detention authority and recommended his conditional release (Dkt. No. 29 at 10, 15). The fourteen-day objection period lapsed, and no party objected. For the following reasons, the Court **ADOPTS IN PART**, **REJECTS IN PART**, and **MODIFIES IN PART** the Report and Recommendation (*see* Dkt. No. 29).

### I.   BACKGROUND

#### A.  Factual Background

Petitioner, an Iranian citizen, entered the United States on January 27, 2025 (Dkt. Nos. 6 at 1, ¶¶ 1, 3; 29 at 1; Hr'g, May 18, 2026, at 1:04:08–20). At that time, Presidential Proclamation No. 10888 suspended entry at the southern border and prohibited Petitioner from seeking asylum or withholding of removal (Dkt. Nos. 28-1 at 5; 29 at 2). Proclamation 10888, Guaranteeing the States Protection Against Invasion, 90 Fed. Reg. 8333, 8334–35 (Jan. 20, 2025) (the "Proclamation"). Rather, Petitioner was

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche is automatically substituted for Respondent Pamela Bondi in this case. Markwayne Mullin is automatically substituted for Respondent Kristi Noem and David Venturella is substituted for Respondent Todd Lyons under this same rule. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

1

referred to USCIS for Convention Against Torture screening (Dkt. Nos. 28 at 3; 28-1 at 13–14; 29 at 2). The record suggests Petitioner never filed the appropriate documents with USCIS (Dkt. No. 25-1 at 5 ("After reviewing the Record of Proceeding, the immigration court finds that Respondent did not file any applications within the time limit.")). On May 9, 2025, an Immigration Judge ("IJ") ordered Petitioner removed to Iran (Dkt. Nos. 25-1 at 5; 29 at 2).

On July 2, 2025, relevant provisions of the Proclamation were declared unlawful. *See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 94, 95 (D.D.C. 2025), *aff'd sub nom. Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81 (D.C. Cir. 2026). USCIS interviewed Petitioner and determined he did not overcome his presumption of inadmissibility or establish a credible fear (Dkt. No. 24-2 at 1–2). Petitioner requested that an IJ conduct a *de novo* review of the negative credible fear finding (Dkt. No. 24-2 at 2). *See* 8 C.F.R. § 1003.42(d).

On September 29, 2025, an IJ affirmed the negative credible fear determination (Dkt. No. 24-3 at 2). Therefore, Petitioner's order of removal became final on that date (Hr'g, May 18, 2026, at 1:04:52–54; 1:05:13–19). As of the date of this Order, Petitioner has been detained for 290 days post-removal order.

### B. Procedural Background

Petitioner filed this habeas proceeding, seeking his immediate release (Dkt. Nos. 1, 6). Initially, Respondents moved to dismiss the petition for lack of subject matter jurisdiction, or alternatively for failure to state a claim (Dkt. No. 10). The Court referred the Petition and that motion to United States Magistrate Judge Brian C. Bajew (Dkt. No. 14).

Judge Bajew conducted a motions hearing on May 18, 2026. During the hearing,

the parties' arguments were cabined to *Zadvydas v. Davis*, 533 U.S. 678 (2001) framework. Respondents conceded Petitioner was subject to a final order of removal, dated September 29, 2025 (Hr'g, May 18, 2026, at 1:05:13–19). According to Petitioner's counsel, Respondents failed *multiple times* to effectuate Petitioner's removal (Hr'g, May 18, 2026, at 1:05:43–55). The breakdown in diplomatic relations between the United States and Iran, and regional instability, functioned as additional hurdles to Petitioner's removal (Hr'g, May 18, 2026, at 1:07:05–11, 1:07:39–40). Indeed, Respondents admitted they are presently unaware of *any* third country willing to accept an Iranian citizen, and Petitioner's removal to Iran was unfeasible at this time (Hr'g, May 18, 2026, at 1:07:44–08:10, 1:08:24–35, 1:10:10–14).

Days later, Respondents abruptly pivoted and argued Petitioner was detained under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)[2] (Dkt. Nos. 21, 23; Min. Ent. May 29, 2026). Therefore, according to Respondents, *Zadvydas* is not the bedrock for the Court's analysis (Dkt. No. 24 at 10). Respondents claimed § IV authorizes Petitioner's detention until he is removed *unless* he is granted discretionary parole (Dkt. No. 24 at 10). Naturally, Petitioner opposed that characterization, resting on Respondents' prior concessions and persuasive case law (Dkt. No. 28 at 4, 6–7).

In his Report, Judge Bajew principally agreed with Respondents on the detention authority issue (Dkt. No. 29 at 10). He deviated from them on the length of detention, deciding it violated due process,[3] and recommended Petitioner's conditional release (Dkt. No. 29 at 14–15). No party objected to these recommendations; nevertheless, the Court

---

[2] For ease of reference, the Court refers to this mandatory detention provision simply as § IV.

[3] The Court notes that Judge Bajew's Report and Recommendation is ambiguous as to whether he found a procedural or substantive due process violation (*see* Dkt. No. 29).

3

has carefully reviewed the Report, the record, and all relevant case law.

## II.    LEGAL STANDARDS

Typically, to obtain *de novo* review by the district court, a party must file specific, written objections to a magistrate judge's proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). However, the district court may conduct *de novo* review "despite any lack of objection." *U.S. Bank Tr. Nat'l Ass'n v. Walden*, 124 F.4th 314, 320 (5th Cir. 2024) (quoting *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005)); *see also Jasso v. Barnhart*, 102 F. App'x 877 (5th Cir. 2004) (unpublished table decision) ("[B]ecause the district court undertook an independent examination of the record despite the lack of objections in the instant case, the plain-error standard does not apply."). "When conducting a de novo review, the district court independently [analyzes] the applicable facts and legal standards without deference to the magistrate judge's findings." *Rodriguez-Zubia v. GEO Del Rio, TX*, No. DR-20-CV-0067-AM-VRG, 2021 WL 11680459, at *1 (W.D. Tex. Sept. 13, 2021) (citing *United States v. Raddatz*, 447 U.S. 667, 690 (1980)).

## III.    DISCUSSION

### A. Petitioner is Detained Under 8 U.S.C. § 1231(a)(1)(A), (a)(2)

Judge Bajew found that Petitioner is detained under § IV rather than the statute governing post-removal orders (Dkt. No. 29 at 10). In doing so, he favored language in the *Jennings v. Rodriguez*, 583 U.S. 281 (2018) dissent over the controlling opinion (Dkt. No. 29 at 8–9). The Court disagrees that § IV serves as Respondents' detention authority and holds Petitioner is detained under § 1231(a)(1)(A), (a)(2).

In *Jennings*, the majority emphasized that "[r]ead most naturally, § 1225(b)(1) . . . mandates detention of applicants for admission *until* certain proceedings have

concluded." 583 U.S. at 297 (citation modified) (emphasis added). True, *Jennings* did not specifically examine § IV (Dkt. No. 29 at 8–9 & n.6). But the Court sees no reason to read *Jennings* in such a granular fashion. Rather, it is persuaded that once the proceedings mandating an alien's detention end, "detention under § 1225(b) must end as well." *Id.*

The Supreme Court once more considered the interplay of mandatory detention statutes in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). There, several aliens who were previously removed, and later reentered without authorization, sought asylum. *Id.* at 532. Asylum officers made positive, reasonable-fear recommendations, and the aliens pursued bond under 8 U.S.C. § 1226. *Id.* In stark contrast to the argument advanced by Respondents in the present case, the Government relied on § 1231 as its statutory basis for detention. *Id.* Agreeing with the Government, the *Johnson* Court reasoned the aliens had "been ordered removed," their removal orders were administratively final, and "§ 1231's detention provisions [were] a natural fit." *Id.* at 534.

The same rings true here, and other district courts confronted with Respondents' novel approach to § IV have reached the same conclusion. In *Jamshidiparvar v. Thompson*, No. 5:25-CV-1326-JKP, 2026 WL 301070 (W.D. Tex. Feb. 2, 2026), United States District Judge Jason Pulliam elucidated:

> Even if § 1225(b) provided the detention basis at one time, it gave way to § 1231 and its provisions concerning removal periods once the order of removal became administratively final. Although the provisions of § 1231 might have been inapplicable while Petitioner awaited the final determination on his credible fear assertion, once that determination occurred, there is no reason to not apply the provisions of § 1231. After all, § 1231 governs the detention, release, and removal of noncitizens who are subject to a final order of removal. **Indeed, the issue addressed in *Zadvydas*, "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States," *see* 533 U.S. at 695, appears to be the precise issue in this case.**

2026 WL 301070, at *3 (emphasis added).[4] Correspondingly, *Bhandari v. Bondi*, No. C25-2747-KKE, 2026 WL 369403 (W.D. Wash. Feb. 10, 2026) underscored that once a negative credible fear determination is final, the alien is no longer subject to ongoing removal proceedings, and § 1231 controls. 2026 WL 369403, at *3–4. The Court adopts the well-reasoned conclusions of its sister district courts, finding them persuasive and consistent with the issues presented here.

Accordingly, the Court **REJECTS** the Report's conclusion Petitioner is detained pursuant to § IV (Dkt. No. 29 at 10). *Alnajjar v. GEO Grp., Inc.*, No. 5:25-CV-0822-JKP, 2025 WL 3853217, at *4 (W.D. Tex. Dec. 23, 2025) ("§ 1231 governs the detention, release, and removal of noncitizens who are subject to a final order of removal."). Because it is an inapplicable provision, the Court offers no opinion as to whether § IV is unconstitutional as applied to Petitioner.

## B. *Zadvydas* Warrants Petitioner's Release

Pursuant to the INA, the Government ordinarily secures the removal of an alien during the statutory 90-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period commenced when the IJ affirmed Petitioner's negative credible fear determination (Dkt. No. 24-3 at 2 ("This is a final order. There is no appeal from this decision.")). *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (administrative finality turns on an agency's review proceedings); *see also* § 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. § 1231(a)(2)(A).

---

[4] The Western District of Texas, again, rejected Respondents' reading roughly three months later. *See Yousaf v. Thompson*, No. SA-26-CV-2190-FB (HJB), 2026 WL 1507835, at *3 (W.D. Tex. May 18, 2026) (Bemporad, J.), *report and recommendation adopted*, No. SA-26-CV-2190-FB, 2026 WL 1513235 (W.D. Tex. May 29, 2026) (Biery, J.). Petitioner notes both decisions in his briefing (Dkt. No. 28 at 7).

If the alien is not removed during this statutory 90-day period, the Government may continue to detain them for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701.

> "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink."

*Id.* (citations modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689.

### 1. *Presumptively Reasonable Period of Detention*

Petitioner's order of removal became final on September 29, 2025 (Hr'g, May 18, 2026, at 1:05:13–19; Hr'g, May 29, 2026, at 9:11:37–47). Therefore, Petitioner's post-removal detention commenced on that date. Respondents concede that over six months have passed since this date (Hr'g, May 18, 2026, at 1:05:21–32). **As of the date of this Order, over nine months have elapsed since Petitioner's order of removal became final, and Petitioner remains detained.**

### 2. *Petitioner's Burden*

At this point, Petitioner need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "'Good reason' is not an onerous standard." *Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026) (Pulliam, J.). "It does not

7

require Petitioner to rule out any prospect of removal—no matter how unlikely or unforeseeable." *Yousaf*, 2026 WL 1507835, at *4 (citation modified) (quoting *Mogos*, 2026 WL 475079, at *4). Although the Fifth Circuit instructed that an alien's onus extends beyond "conclusory statements," there is no further binding guidance. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

*First,* the strained diplomatic relations and active conflict between the United States and Iran have rendered removal to Iran virtually impossible. *See Rahimzadeh v. Noem*, 5:26-cv-154, slip. op. at 7–9 (S.D. Tex. June 20, 2026) (Song Quiroga, J.), *report and recommendation adopted*, 5:26-cv-154, 2026 WL 1990775 (S.D. Tex. July 9, 2026) (Garcia Marmolejo, J.); *Anjomshoa v. Oldham Cnty. Jail*, No. 3:26-CV-020-CHB, 2026 WL 1034403, at *3–4 (W.D. Ky. Apr. 16, 2026); *Samiei v. Blanche*, No. 2:26CV458, 2026 WL 1971266, at *2 (E.D. Va. July 8, 2026); *Vijdani v. Mattos*, No. 2:25-CV-02438-JAD-NJK, 2026 WL 1623138, at *2 (D. Nev. June 5, 2026). Although there was a brief, earlier ceasefire, President Trump officially notified Congress the Iranian conflict reinitiated on July 7, 2026.[5] This intervening act undoubtedly thwarts Petitioner's removal, even in light of the arguments presented at the May 18, 2026 hearing (Hr'g, May 18, 2026, at 1:07:05–11, 1:07:39–40). Indeed, this alone may carry Petitioner's burden.

But, here, the Court is further presented with a scenario where Respondents declared—in no uncertain terms—Petitioner could not be removed at this juncture (Hr'g, May 18, 2026, at 1:10:10–14). Nor is third-country removal on the table, as Petitioner's removal order designates his deportation to Iran, and no country is currently accepting

---

[5] On its own, the Court takes judicial notice of this fact. Fed. R. Evid. 201(c)–(d). *See* Patricia Zengerle, *Trump Sends Congress Formal Notice that Iran Conflict Has Resumed*, REUTERS (July 13, 2026), https://www.reuters.com/world/us/trump-sends-congress-formal-notice-that-iran-conflict-has-resumed-2026-07-13/.

Iranian citizens (Hr'g, May 18, 2026, at 1:07:44–08:10, 1:08:24–52). Under these circumstances, Petitioner's removal is not reasonably foreseeable.[6]

### 3. *Whether Respondents' Rebutted Petitioner's Showing*

In short, Respondents have **no clue** when Petitioner can be removed. Rather, they contend they can detain Petitioner *until* his removal, regardless of whether it occurs tomorrow, the next day, when the Iranian conflict ends, or ten years from now (Dkt. No. 24 at 2, 10). This argument cannot mount their rebuttal efforts. *See Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 808 (M.D. La. 2026) (finding a failure to provide a reasonable timeframe for removal to be insufficient to satisfy the Government's burden). This Court declines to speculate about the likelihood or possibility of Petitioner's removal when Respondents themselves do not assert that such removal is anticipated.

Finally, the Court emphasizes that Petitioner has already been detained for over nine months post-removal order, and over a year and six months in total. *Gonzalez v. Warden ICE Processing Ctr.*, No. 2:26-CV-00667-DGE, 2026 WL 1017586, at *4 (W.D. Wash. Apr. 15, 2026) (finding an alien's nine-month detention to be unreasonable). Respondents cannot constitutionally subject Petitioner to a prolonged detention while they perpetually wait to deport him to Iran. *See Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *1 (N.D. Cal. Dec. 22, 2020); *see also Zadvydas*, 533 U.S. at 690 (because deportation proceedings "are civil, not criminal . . . they are nonpunitive in purpose and effect"). Thus, the Court finds that Petitioner's removal is not reasonably foreseeable, and his continued confinement amounts to an unconstitutional, indefinite

---

[6] The *Zadvydas* Court recognized that "if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." 533 U.S. at 700. Notwithstanding the unlikelihood of Petitioner's removal, Respondents acknowledged he had no known criminal history. (Hr'g, May 18, 2026, at 1:11:40–47).

detention. *See Zadvydas*, 533 U.S. at 696, 699 (finding that neither the INA nor the Constitution authorizes indefinite detention); *Vargas v. Noem*, No. 25-3155-JWL, 2025 WL 2770679, at *2 (D. Kan. Sept. 29, 2025) ("[P]etitioner has now been detained for nearly nine months since his removal order became final . . . , well beyond the six-month period sanctioned by the Supreme Court in *Zadvydas*, and officials have still not been able to remove him or even to schedule his removal.").

### C. Third-Country Removal

Petitioner broadly challenges third-country removal as applied to him (*see* Dkt. No. 6 at 9–10). He asserts that the statutory framework demands he be afforded notice and an opportunity to be heard before he can be removed to a third country (Dkt. No. 6 at 9). "**The Court will not resolve this issue, as it is separate and distinct from Petitioner's prolonged detention.**" *Khatchapuridze v. Noem*, No. 5:25-CV-169, 2025 WL 4762013, at *6 (S.D. Tex. Dec. 31, 2025) (Garcia Marmolejo, J.).

### D. Equal Access to Justice Act Fees

Petitioner seeks an award of fees and costs (Dkt. No. 6 at 12). The Fifth Circuit expressly rejects EAJA fees for successful § 2241 petitions. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023); *see Bobomirzaev v. Bondi*, No. 5:25-CV-00297, 2026 WL 972331, at *4 (S.D. Tex. Jan. 23, 2026) (Kazen, J.). Because this relief is not authorized by statute, Petitioner's request is **DENIED**.

## IV.    CONCLUSION

Accordingly, **ADOPTS IN PART**, **REJECTS IN PART**, and **MODIFIES IN PART** the Report (*see* Dkt. No. 29).

Petitioner's Habeas Petition (Dkt. No. 6) is **GRANTED IN PART**. Respondents' Motion to Dismiss (Dkt. No. 10) is **DENIED AS MOOT** and Motion for Summary

Judgment (Dkt. No. 24) is **DENIED**. Petitioner's request for EAJA fees and costs is **DENIED**.

Petitioner's Motion to Withdraw (Dkt. No. 13) is **GRANTED** and the Court **STRIKES** Petitioner's Motion to Stay Deadlines (Dkt. No. 11).

The Clerk of Court is **DIRECTED** to update the nature of this suit to 8:1105(a) Aliens: Habeas Corpus to Release INS Det.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody to a public place **no later than 5:00 p.m. on July 20, 2026**. Petitioner's release is subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than two hours before his release**.

The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on July 22, 2026**, confirming that Petitioner has been released and advising the Court of his conditions of release.

The Court's prior **ORDER**, that Respondents **NOTIFY** Petitioner's counsel and the Court of any planned removal of him from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** July 16, 2026.

Marina Garcia Marmolejo
United States District Judge

11